Good morning, and may it please the court. My name is Rebecca Jensen. My partner Alejandro Cabrales and I, as part of the Immigration Clinic here at the University of Idaho, represent petitioner Yosvany Alonso Elizalde. Ms. Jensen, could you pull that microphone a little closer? Yes. Thank you. The judge in this case violated Mr. Alonso's due process rights and committed legal error by cutting off his testimony and ignoring threats by Cuban government officials that he wouldn't be able to work again within the repressive state-controlled employment system. First, I'll discuss due process and second, legal errors. With respect to the jurisdiction issue, we would like to rest on our briefs. For due process, Mr. Alonso Before we pass on jurisdiction, is it your position that when the board sua sponte grants a motion to reopen, we continue to retain jurisdiction even though there's no longer a final agency order? Correct. It's our position that the statute vests jurisdiction in one court at a time. This is the Ninth Circuit authority that says we only have jurisdiction over final orders? Yes, that is. So if the board vacates the order when it grants or sua sponte the motion to reopen, there's no final order extant, is there? There is no final order. The regulation gives them authority to reopen, but it's ultra virus when the case is pending in the court of appeals. That is our position and the government concedes that the court has jurisdiction over the merits of the case. Let me ask you the question in a different way. If we look at the relief that you're asking for, does it matter whether the initial order of the agency still stands? Can't you still raise the same arguments with regard to the second order? Right. So it's kind of a point that only... That's kind of why you're moving on to the other arguments? Yes. So let me ask you about the due process one, because what's your best case for where due process rights have been violated in a case like this? Jacinto. This is a case that clearly falls under Jacinto. The immigration judge has a duty to develop the to hear his story. He wrote it in his application. He attempted to testify on it and the immigration judge... I thought that the immigration judge specific... I know there were some interruptions, which isn't uncommon as you're going through the hearing, but in the end, the immigration judge did allow him to say, is there anything more you want to say? Why isn't that resolved? Any requirements that are completely unknown to a non-English-seeking pro se applicant, and it is the IJ who knows the legal standard and all the relevant facts that Mr. Alonzo would have to prove. And so asking general questions alone is not enough. It seems like, counsel, there's a fine between having the immigration judge develop the record and make sure that the petitioner who doesn't have counsel and may not understand the system, probably doesn't understand the system, has an opportunity and sort of some promptings on making sure that they tell their full story. There's a fine line between that and having the immigration judge essentially become a lawyer for the petitioner and asking all the right technical questions and leading them down that path. Are you saying that due process requires the latter, that the immigration judge has to essentially take on the role of advocacy for the petitioner? No, that is not our position. It is more that when... There's two pathways to asylum, past persecution and future persecution. And if he doesn't allow, if he doesn't say, in the future, do you have a well-founded fear of returning to Cuba, and then cuts off any testimony about future threats or about severe economic harm that he faced, that is the... Where's your example of where he cut off that testimony, though? Ashodi? No, where's an example in the record from the IJ that the IJ cut off the testimony? On the record, on 150, the immigration judge asks... He starts talking about the 2017 incident, and then the immigration judge says, but sir, did anything happen with you and the government after in 2017? And immediately, Mr. Alonzo interprets that as talking about leaving the why he left Cuba, because he... So you're saying that the question diverted him from what he would have said. You think there's more evidence that he would have presented about the 2017 incident that would have suggested it was past persecution? Absolutely. He says that... What is that? Yeah, he describes that in his supplemental statement to the BIA. It says after he was told he would be surveilled, and as a punishment for talking against him and coming out against the sector boss and saying what he was doing is wrong, essentially asserting his political opinion, he would lose the opportunity to work anymore. But that's in the record, is it not? It is, and the immigration judge never received testimony about that. That was before the board. So what additional... I have the same concern Judge Nelson has. What additional evidence would he have proffered that he didn't otherwise get into the record? Because everything you just said is in the record. But it's not in the immigration judge's decision, and he couldn't develop it. And so... But we're reviewing the decision of the board at this point since they reopened. Right. So I'm a little confused as to what the additional evidence would be beyond what you just said. It is for the agency to allow him to provide a narrative about all of the pieces of his testimony. Counselor, you're not answering my question. My question is, what more would he say? He could say why... What the government... He could say that the military is searchable by government officials. How do government officials know that he didn't serve in the military? He could say how often does a police officer encounter people who work in the private sector, and how often is that the first question out of their mouth when they arrest them for... When they stop them for buying shoes. But he was asked those questions by the police officer, was he not? And he readily admitted he hadn't served in the military. Right. He needs to establish... He needs to establish that particular social group and political opinion. And the immigration judge did not elicit facts that can show... I mean, I think you're right. On 150 and the record, there is an interruption. And perhaps that did have the petitioner lose his train of thought. But two times after that, the immigration judge asks an open-ended question, including, is there... Now's your chance. Anything else you want me to know before rendering a decision? So why isn't that sufficient to overcome any sort of problem with the interruption of allowing him an open-ended opportunity to say anything else that he thinks is important before a decision gets made? Under a Shodi v. Holder, the immigration judge also cut off the applicant from testifying about saying, after the direct testimony, said, if there's anything else you'd like to add to close. And the due process violation happened once he cut off the testimony. And he would not allow him to testify about the severe economic persecution, which could be a pathway to past persecution. He did not present... The immigration judge never considered the cumulative effect of Mr. Alonzo's harm when deciding past persecution because he simply omitted the 2017 threats that he would be surveilled. He never considered the severe economic harm of not being allowed to work anymore. But he did testify that he was a sole support of his father from age 12, right? Right. And he also testified that if he were returned to Cuba, because he had not been in government military service, he would not be able to find a job within 30 days, and that he would be incarcerated. So isn't that all in the record? Right. But it's missing from the immigration judge's decision, and he did not get a chance to receive that testimony and be examined on it. So with the beating, for example, how was he beat? Did he use anything to beat Mr. Alonzo? Why was he given food? Was he given a blanket in the prison? We don't know how severe it was because he just accepted... But didn't he testify that he wasn't injured? In other words, he was hit in the abdomen, but that he didn't seek medical attention. He didn't say that there were any bruises or anything like that. And we've got case law that says just because you get arrested and you get roughed up a little bit by the police, that's not necessarily torture within the meaning of the Refugee Act to establish persecution. Right. But under Salguero-Sosa, that is a December 2022 decision, the immigration judge was required to consider the cumulative effect of all the harms on the record, not just individualize them. On that issue, we're on substantial evidence review, right? So it's not just that the evidence could support that inference. It has to compel it for us to come out differently from the agency. So how does the evidence only compel us to reach that decision that what happened to him reached the level of persecution as opposed to just that's one possibility? In a record that is fully developed, then this court can look at the substantial evidence. But here we're looking at the legal rules they applied and it's a de novo review. And you make a substantial evidence showing without relying on your due process argument that the record needed to be more fully developed. Yes. All the basic information is there to support the grant of asylum, but the judge didn't allow him to develop that and it committed legal error by doing that. And those various legal errors in the immigration judge's analysis did not let him consider the fully developed record. And I'll relinquish the rest of my time to rebuttal. Thank you. Thank you. We have from the government. Good morning, Your Honors. Counsel, may it please the court, Rob Stalzer on behalf of the AG. Your Honors, the heart of this case is the asylum claim. But before we get to that, we do have some antecedent matters to get through involving jurisdiction and exhaustion. That's on the motion to reopen? Yes. But I mean, I took it to be that they've sort of moved on from that.  that the court should be reviewing the order. You think there's a jurisdictional problem on the second? I don't see a jurisdictional problem on the second one. I mean, if you want to spend time on the jurisdictional issue, you can. I'm happy to move on. Yeah, I'm trying to figure out what difference it makes. I don't think it makes much difference other than we did need to defend that point simply because, you know, you want to you want to make sure we don't mess it up. Well, we can't have a rule suggesting that the board is without jurisdiction when the court has statute. They both have jurisdiction. I think I can safely assure you this panel is not going to issue a disposition that says that. Understood, Your Honor. Let's move on, then, to the due process argument, which petitioner did not exhaust and therefore should not be for review. So you think we should decide the due process issue on exhaustion, not you don't even think we should reach the merits of it? I don't think you should reach the merits. I think if you do reach the merits and the alternative, it still doesn't win the day for petitioner. But I think before we get to the merits of the due process argument, we have to talk about exhaustion. Even a pro se petitioner like Mr. Alonso has to put the board on notice that he's raising the issue. And he doesn't have to use legal terms, but he does have to speak in such a manner that the board knows what he's talking about, the issues that he's actually raising. The petitioner here in his statement, notice of appeal, and then in the supplemental statement, didn't give any hook that he was raising a due process argument. There's nothing in there about it was unfair. There was nothing about the judge didn't give me enough time. He does say in his brief to the BIA, and I quote, he wasn't able to provide enough evidence in time to the court. So isn't that some indication that he thinks that there's a problem with the record? That sounded more to me, again, it's the one line in the middle of his statement, but it sounded more to me on a suggestion that he was raising a belated suggestion that he should have been afforded a continuance. But he never asked for a continuance in front of the immigration judge. Well, but I mean, if it's an ambiguous statement, don't we give the pro se petitioner the benefit of the doubt on something like that? Only where it puts the board on notice that that's the argument he's raising. And his argument now is that the immigration judge should have more fully developed the record. At the same time, Petitioner's counsel just suggested that the record is adequate as it is to rule in his favor on the merits. It seems to me those two statements are in tension. Either the record is not complete enough to proceed and the immigration judge should have known that, or it is and he should prevail here. It doesn't seem to me that both of those things can be true, your honor. Although, I mean, you can make alternative arguments all the time. Yes, your honor. So when you're getting into the due process, what is the standard here? I mean, do you think that, let's assume for sake of argument that we thought that there was an interruption and that could potentially be a due process. Is that cured by the fact that at the end the IJ said, hey, do you have anything else you want to do? It is in conjunction with the other participation of the immigration judge. So the standard on this, of course, is a full and fair opportunity to develop your case. I think in Hussain against Rosen, the court put it an ample opportunity to develop his testimony. And in this case, he does have that ample opportunity. The immigration judge first read about his asylum statement and then invited him to expand on it in narrative form. And then during the narrative, the immigration judge asked probing questions, continued to ask him to clarify. So we're looking at the form of the question because here, I mean, it is interesting here. It doesn't seem like he was saying, hey, stop talking about this. I want to know about this. He asked a question which apparently diverted his attention to another subject. Is that how we analyze this? Like if he'd asked a more, hey, I don't want to hear anything more about that. I want you to tell me about this. Would that have been more of a due process violation? I think there would definitely have been a problem if the immigration judge simply says, don't talk about that. I don't want to hear about that. Let's talk about it. Like that would obviously, that's. So as long as you divert counsel subtly, you can get past the due process issue. Is that the test we're setting for the IJs? No, your honor. What I'm saying is that in this case, he did divert petitioner briefly, but they do get back on track. I mean, he continued to probe, petitioner continued to give his narrative. And of course, at the end, the immigration judge then invited him to give his full statement and actually waited until DHS, the trial attorney, had given his statement and then said, I want to give you the final word. And then the petitioner finished himself. And I think to any extent that there was a problem with the interruption, I think it was cured, at least at that point, given everything that had happened, all of this, you know, please tell me your narrative, explain this, please drill down on that. He asked him probing questions. I mean, this looks like a full and fair hearing, and it's unclear what else he could have told the immigration judge that we don't already know. No, if we found that there was a due process violation, I suppose we should just find that and send it back and not even reach, because then we'd be saying, you know, there's more, we want to see more developed before the IJ. And so we wouldn't address these other issues. I think I would agree with that, assuming, obviously, that it's adjusted. Right. Okay. He still has to show prejudice. He does have to show prejudice. In order to establish a procedural due process violation. The violation has to matter. It has to make... It would have to make a difference. So we still have to say, oh, there's actually some So then let's assume we, you know, we don't go with the due process, then we've got to reach whether there's substantial evidence on past persecution. If we find that there was substantial evidence to support the IJ's finding of past persecution, then we don't need to reach the nexus issue. I think you do need to reach nexus only because that speaks to the future persecution in addition to the past. But would we have to reach nexus? Okay. How is that true? I mean, I read the nexus finding that the immigration judge made as relating to past persecution in the 2015 and 2017 incident. But there's, I mean, I read the IJ's opinion a couple of times and there's hardly a whiff of anything about future persecution. Right. It has to do with what he could reasonably be expected to fear in the future. And that's why it's relevant as to whether or not these prior incidents, which petitioners now arguing, involve the government at large persecuting him because of his status as a person who'd never been in the military. But the evidence showed, and this is what the immigration judge focused on in his decision, that these two incidents were not based, that the animus, the nexus, wasn't based on his political opinion or any other social group. It was based on, in the case of the police officer in 2015, apparently he thought he was extorting tourists and then the police officer got angry at him for not confessing. And then of course, the 2017 argument was largely not directed, the incident was largely not directed at petitioner at all. It was directed at petitioner's boss. Couldn't a person who, I mean, even if that's true, that those two incidents started for reasons unrelated to a protected ground to get immigration relief, isn't it possible that somebody who then has that history that has developed and those interactions with law enforcement is now going to be in a different position. And so the immigration judge needed to separately address the past persecution argument and then the fear of future persecution argument. Why didn't he have to do the second thing? Because of the nexus findings that he made, that he didn't believe petitioner would be targeted on account of a protected ground. I mean, I read that as he didn't find that those prior incidents were connected to a protected ground. And that seems, I understand the immigration judge's reasoning. I don't see how that saves the day for the possibility of future persecution. I think it's in the immigration judge's nexus discussion on page 87 of the record, just in discussing that he couldn't find that this would be, there would be a nexus to a protected ground. Can I ask you about 87? At page 87, the IJ says the respondent would have to prove that he has a past persecution or that he has a reasonable possibility of a future persecution and he has not shown that he is satisfied. He hasn't shown any evidence either of past persecution or of future persecution. Yes, your honor. I think it is. And he didn't, you know, he goes back, he goes in and further discusses the past persecution evidence, but there's not as much of a granular discussion about future persecution. You think we can still rely upon that statement that I just read? Is there anything else that the IJ says about future persecution? Yes, on page 90 of the record, your honor. This is after the immigration judge's discussion of the safe third country bar. He's talking about withholding at that point, because he did rule that petitioner was subject to the safe third country bar. And he goes on to mention about that he had not demonstrated that he was accused because of his political opinion or other, any of the other five reasons to the court could not find a past persecution and it could not find that the respondent has a more likely than not chance of a future persecution. So there he does, again, he's wrapping that back in his withholding analysis, which isn't before us, but I think the reasoning is the same here, same there as with the asylum application. I'm sorry, I'm not seeing where you're quoted. It's on the middle of page 90 of the record, your honor. What's the page? My copy shows a different page number in the lower right hand. What page number? Oh, it's in the lower right hand. It's 90. No. Of the BIAs. What's the page number of the IJs? Oh, page number of the IJs. Nine. Nine, page nine, your honor. Okay, thank you. So, I mean, I'm struggling with this a lot because the standard that we have to apply is that we have to, there has to be enough in the agency's decision for us to know that it considered the issue and decided it and didn't just blow by it. And all we have here is a statement of the black letter law to get asylum. You have to prove either past persecution or a well-founded fear of future persecution. There's two ways to do it. And then the summary conclusion of you says sort of granular discussion about past persecution incidents and no substantive discussion or response to the petitioner's argument that because I haven't served in the military and because I have a history of having private employment, I'm not going to be able to get a job and Cuba's going to throw me right in jail 30 days after I get back to my country. How am I supposed to, based on these very generic statements that the immigration judge made, understand that the immigration judge heard the argument the petitioner made and actually decided it as opposed to just ignored it? Two ways. One, because he does, the immigration judge does recount that testimony in his discussion, in his decision. And then further because he then makes the affirmative facts about nexus, right? He is probing what the petitioner could reasonably be expected to fear. And that's why I think there's enough here, Your Honor, to say that immigration judge certainly considers. So he addressed future harm in the withholding of removal in the cat claims. Is that, I mean, can we, can we say that because he addressed future harm in those other claims that suggests he's considered future harm for past or for future persecution as well? Yes, Your Honor. And I think that goes to the AR-90. I don't know if that's exactly what you were referencing before. Right. Well, he specifically links his discussion at AR-90 of the future persecution to his prior discussion of the asylum. And he does say that the court could not find that the respondent has a more likely than not chance of future persecution. But I mean, I guess this really boils down to, what if he just said that? What if the IJ had just said, look, I've reviewed the record. I don't find this to be enough. And it was two sentences. Would we affirm and say, well, he said he reviewed the record. We're looking at the record. The record seems to support this. Would we say that's enough? I suspect unless the board intervened in some way and said something additional, the court would probably say that's not enough, because the agency does need to say enough that this court has. Well, and I think that's what, I think that, you know, not speaking for my colleagues, but that might be the struggle here is, in some ways, that's a bit what he did here, at least as to future persecution. I think it's a step further than that, maybe, because the line that you've quoted us from the opinion about the court could not find a past persecution and it could not find that the respondent has a more likely than not chance of a future persecution for withholding, the standard for asylum is less than that. It's just a well-founded fear, not a more likely than not chance. So I give you that the immigration judge made a finding on the withholding standard. Asylum standard is less and there is no finding of that. So how can we say that the immigration judge made a finding on asylum on this key point when there is no statement of that? Again, I think probably page 86, I think it was, just the black letter statement and the discussion of the evidence. It all comes back to, I think, Your Honor, the substantial evidence standard of review. There's nothing we can put our finger on here and say, actually, immigration judge, you've got it wrong. He could be persecuted because it's even a 10% chance because of this or that or the other thing. There's just no evidence here suggesting that he's going to end up facing that sort of persecution in Cuba based on what he told the immigration judge and told the board on appeal. Well, and I mean, that's the tough thing, though, because I mean, we could look at this record and say, well, we don't find any evidence here. But the IJ, you know, if the IJ didn't show his homework, theoretically, we need to send it back for the IJ to actually make that decision. Can you cite us to another case where there's been a finding made in the removal context or the CAT context, the withholding of removal or the CAT context, where we've said that's enough, we're going to transfer it into the asylum context as well? Off the top of my head, I can't name you on, Your Honor. I see my time is about up, but if there is nothing else, thank you very much. And we'll hear from Ms. Cabrales. Good morning. There are two things I'd like to address on rebuttal. First, Mr. Alonso testified that he did suffer past persecution and that these two incidents were related to his political opinion. Both incidents occurred because of his work in the private sector and his lack of military service. It was on both incidents that Cuban government persecutors asked him about his private work and why he did not complete military service. What about future? If we don't agree with you on past persecution, do you have a separate argument on future persecution? I mean, that's what we've been talking to the government about. I'd be to probe that as well. Yes, Your Honor. Arguing also future persecution, here the IJ does not discuss it at all, which is a legal error. It should be reviewed under de novo. But the IJ does discuss future persecution and does say, I mean, make some pretty strong statements. Granted, like in the CAT context, he says there's no reason in the record for us to believe that he is likely to be tortured by any government official in Cuba or that anybody is going to him to severe pain or suffering as part of a process of trying to get information out of him or make him do something or fail to do something. That does suggest that there's not any fear of future persecution. Why can't we look at that and say that's enough, given that he recognized the standard, he looked at the record and he said the record didn't support that? Here in Mr. Alonso's there's more. He did include in his asylum application that he was told he could no longer work. And from the country condition reports that were provided, we know that Cuba controls employment. So that shows severe economic hardship on Mr. Alonso. That's not, is that, I mean, have we held that that's persecution? Severe economic hardship? I believe so. I don't know the case off the top of my head, but also in the cumulative, taken with severe economic hardship, also the threats that he would be monitored and followed and the two incidents already that he did testify, the 2015 and 2017 incident, could in the cumulative show. But I think the IJ, I mean, all of that was in the record and the IJ did seem to consider that. So I'm going more to future persecution. I mean, what is the evidence of future persecution? It's just what you just recounted, that that's likely to happen in the future. There are some evidence to show, but also goes to show in the record, there's not as much addressed. It wasn't, it was underdeveloped here in Mr. Alonso's case to show. Which goes back to your due process argument. Yes, correct. The due process argument, you know, it was underdeveloped. Mr. Alonso didn't testify regarding whether, you know, what Cuban, what if he were to go back. He did testify a little bit. Yes, you know, he might be arrested, but not the future likely outcome of his employment. How they would see that if he were to go back because he left. Is that an opposition? How does Cuba take that? And then going to the due process, you know, he was as a pro se asylum applicant. He did quote, he did notify the BIA that he quote, wasn't able to provide enough evidence and further that the remedy he saw in this case was for someone to quote, hear my story. I see that I'm out of time. Can I have a brief moment to conclude? Yeah. Okay. Mr. Alonso did exhaust to the best of his ability that he wanted someone to hear his story and that both incidents occurred to at least one central reason. For all these reasons, this court should hold, should send the case back to the agency to consider whether to grant asylum or to send the case back to the IJ to further develop their record. Thank you. Thank you. Thank you, both counsel for your arguments today. And we want to especially thank the students for stepping in on a pro bono project. We've very much, the court's been very well assisted by the briefing and the argument today. We're always gratified when students step in, they, they take the cases seriously. And, and, and today is no exception to that. You know, we've known we were, as judges, we were talking about this, that we have a pretty robust pro bono program now in the ninth circuit. And we're looking at the history of that. And, and the university of Idaho was here before the ninth circuit, even had a pro bono program and jumped in as some of the first cases. So we're, we're grateful for the service that's been done. And we hope that that legacy continues. It's an honor to the law school and it's very helpful to the court. So thank you. Thank you very much. And thank you for coming too. I didn't mean to leave you.
judges: TALLMAN, NELSON, FORREST